### DILLARD et al. v. BERRY et al.

No. 15955. Opinion Filed March 23, 1926.

Rehearing Denied Jan. 18, 1927.

**1. Bonds—Contractor's Bond—Scope of Liability.**

A contractor's bond conditioned to faithfully perform the contract on the part of the principal "and satisfy all claims and demands incurred for the same," and which further provides that, in case of default, to "pay all persons who contracted directly with the principal for labor or materials", must be construed to mean that in case of default the liability on the bond is restricted to such claims and demands for labor and materials as were contracted directly with the principal and not otherwise.

**2. Same—Bond Construed as not Statutory.**

A bond as above conditioned is not a statutory bond under section 7486, C. S. 1921.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by H. C. Berry et al. against A. W. Williams et al. Judgment for plaintiffs, and defendants appeal. Affirmed in part and reversed in part.

See, also, 114 Okla. 47, 242 Pac. 234.

Charles A. Coakley and James H. Mathers, for plaintiffs in error.

Brown, Brown & Williams, for defendants in error.

Opinion by THREADGILL, C. This case involves the construction of, and liability on, a contractor's bond to build a schoolhouse and teacherages. The material facts are about as follows: On October 3, 1922, one A. W. Williams entered into a written contract with the school board of school district No. 73, consolidated, in Carter county, to build a schoolhouse and certain teacherages for the sum of $24 570. Thereafter, on October 27, 1922, the said A. W. Williams,
126—1

as principal, and J. H. Dillard and Fred J. Pierce, as sureties, made and executed a bond to the said school district for the sum of $24,570, conditioned for the faithful performance of the contract on the part of the contractor—

"And satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracted directly with the principal for labor or materials, then this obligation shall be null and void; otherwise, it shall remain in full force and effect."

J. H. Dillard was the first of the sureties to sign the bond, and the contractor offered it to the school board with just his name as surety, but the board required another surety as a matter of form, and when Fred J. Pierce signed it and the contractor informed Dillard, he objected to the bond being delivered without a stronger surety than Pierce with him on the bond, but Williams delivered the bond to the school board without getting anyone else to sign it and they took it and placed it in the bank. Soon thereafter Dillard notified the school board that he was not willing to remain surety on the bond without some stronger surety than Pierce signed with him. They failed to get anyone else, and the work was commenced while the bond was still in the bank, and, in fact, it was not filed in the court clerk's office until March 3, 1923. There was considerable delay in starting the work caused by securing a building site and unfavorable weather. However, it appears that during this delay, in the actual building, the contractor ordered and placed on the ground nearly all of the materials for doing the work. The school board became dissatisfied with the progress of the work and notified the sureties, and the surety, Pierce, responded, and he and the school board met Williams, the contractor, at the school site on

the morning of February 14, 1923, and discharged him and appointed a man by the name of A. P. Brown at $9 per day to take charge of the work and proceed with the buildings. He worked till February 17, 1923, when, for some reason he retired, and H. C. Berry took charge as superintendent and finished the contract. A. P. Brown testified that he built the Berwyn schoolhouse, which was a larger building than this one with the same number of rooms, for $20,000. It appears from the record that the school board spent the $24,570, the contract price, and issued bonds for $15,000 more, which was used, and the claims sued on were in the sum of $14,502.72 making the sum total of $54,252.72—all of which was used in fulfilling the contract for the schoolhouse and teacherages in school district No. 73, and yet at the time the contractor, Williams, was discharged, nearly all of the materials .or the contract were bought and paid for and on the ground, and about $10,000 of the $24,-570 was still in the treasury. After the buildings were finished, it was found that there were no funds with which to pay the various claims making up those of the plaintiffs in this action, and they all joined in one suit to recover the respective amounts owing them against Williams and his sureties on the bond, the school board of the district, and the individual members of the board. The action was dismissed as to the school board and the individual members of the board. and issues were joined between the plaintiffs and the principal and sureties on the bond. Plaintiffs pleaded the bond as a statutory bond and asked for judgment against the principal and sureties, on the theory that it complied with section 7486. Compiled Statutes 1921, and they pleaded facts to show that the ·plaintiffs furnished materials or performed labor in carrying out the building contract. However, they ·were not partners, nor were they interested in the claims of each other. The parties stated that the suit was brought for them to avoid a multiplicity of actions. A separate cause of action was stated for each plaintiff according to the nature of his claim and the amount thereof. The question of defective parties and misjoinder of actions is not raised. The defendants answered by a general denial, and they further state that the bond sued on was not executed and delivered as by law required, and the contract was rescinded by Dillard; that the contractor was wrongfully removed and prevented from fulfilling his contract; that the labor and materials for which the action was brought were not contracted for by the contractor, A. W. Williams. These were the issues in the

trial. The plaintiffs recovered judgment against Williams and his bondsmen, and the defendants have appealed and have set up various assignments of error for reversing the judgment, but, as we view it, the decisive question to be determined is whether or not the bond sued on is broad enough in its terms to include the claims of the plaintiffs in the action.

In construing the bond we must look to all its parts to discover the intention of the parties. At its head we have the following: "The Standard Form of Bond Issued by the American Institute of Architects". Then follows a list of the National Builders Association of the United States that have approved the form, and then we have these words: "Second Edition, Compiled 1915 by the American Institute of Architects. the Octagon, Washington, D. C." Under this heading the bond is written. First, we have the obligation entered into on the part of the principal and the sureties to the school board of district No. 73 of Carter county. to pay $24,570, according to the amount of the contract price for the school buildings, and then the conditional paragraph setting out the conditions:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same, and shall fully indemnify, and save harmless the owner from all cost and damage, which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and will pay all persons who have contracted directly with the principal for labor or materials, then this obligation shall be null and void; otherwise, it shall remain in full force and effect."

After this there is a provision limiting the time of bringing action on the bond, and, lastly, a waiver as to alterations and extensions of time in fulfilling the contract

It will be observed from the conditioning paragraph of the bond, that there are two distinct provisions in it: The one is to faithfully perform the contract on his part, and in so doing "satisfy all claims and demands incurred for the same." The other is that. in case of failure to perform the contract, to fully indemnify the owner for all cost and damage resulting from the failure, and "fully reimburse and pay the owner any expense he may be out in making good the default, and pay all persons who have contracted directly with the principal for labor or materials." Thus it appears that the liability on the bond, in case of faith-

ful performance, is to satisfy all claims and demands, but in case of default in the performance of the contract the liability as to other persons than the owner extends only to persons who have contracted directly with the principal for labor or materials. This is the plain meaning of the language used in the bond contract, and is far from the contract provided for in section 7486, Compiled Statutes 1921, under which this action was brought. The statute provides for a bond "to pay all indebtedness incurred for labor or materials furnished in the construction of said public building, or making said public improvements," without regard as to whether the principal performs the contract or defaults in the performance, while the bond in controversy provides that all claims and demands incurred in the principal's performance of the contract shall be paid, but in case of his default, then only such claims and demands as were contracted directly with the principal. To construe the conditions in this bond to be a compliance with the statute would be to change the meaning of the terms and make a new contract for the parties, and this the court cannot do. Wilson v. Nelson, 54 Okla. 457, 153 Pac. 1179. Applying this construction to the facts in the case, there is no liability on this bond for any of the claims sued on except such as were contracted directly with the principal, Williams. The evidence shows that the only claims thus contracted were Frank Morgan for $93; M. B. Moore. $51; William Byers, $93.48; and Albert Byers, $19.50. All the other claims were contracted with other parties after the principal, Williams. had been ordered to give up the contract and retire from its further performance.

Defendants have raised some other questions that are discussed by both parties in their briefs with a great deal of interest and citation of authorities, but we do not think it would serve any useful purpose for us to follow the discussion, since we have disposed of the one question that underlies all the other questions discussed by the parties.

We are therefore of the opinion that the judgment of the trial court should be affirmed as to the plaintiffs, whose claims were contracted directly with the principal, A. W. Williams, and the judgment as to the other plaintiffs should be set aside and this cause remanded to the trial court with directions to dismiss the cause of action of all the plaintiffs except those for whom the judgment is affirmed.

By the Court: It is so ordered.

Note.—See 9 C. J. p. 856 §195 (Anno); 35 Cyc. 960.