ROYAL INDEMNITY CO. v. UNITED
STATES.

No. 46617.

United States Court of Claims.
Oct. 2, 1950.

The plaintiff, which was the surety on a bond executed December 15, 1919, and filed with the Collector of Internal Revenue by the Louisville Woolen Mills, covering the fourth installment of income and profits tax shown to be due upon a return filed by said Louisville Mills for 1918, seeks to recover said fourth installment subsequently paid with interest.

Plaintiff filed a claim for refund which was rejected. The basis of its claim here is that the Louisville Woolen Mills was affiliated throughout the year 1918 with certain other corporations, and a consolidated return should have been filed; that, in February 1921, the parent corporation, the American Textile Woolen Company, sent to the Commissioner of Internal Revenue a consolidated return, and in connection with the consolidated tax liability, said parent corporation assumed the liability for the consolidated tax of the group; that these circumstances relieved the Louisville Woolen Mills and plaintiff, as its surety, from liability for the fourth installment of the tax shown on the separate return filed by said Woolen Mills, and such tax became barred five years after said separate return was filed or five years after the date on which the parent corporation sent the consolidated return to the Commissioner.

Special Findings of Fact

1. Plaintiff, Royal Indemnity Company, is a corporation organized under the laws of the State of New York.

2. Prior to, and during the entire calendar year of 1918, American Textile Woolen Company, a corporation (doing business in the Nashville, Tennessee, collection district and hereinafter called "American"), owned all the capital stock of Louisville Woolen Mills, a corporation (doing business in the Louisville, Kentucky, collection district and hereinafter called "Louisville"), and also all of the capital stock of Sweetwater Woolen Mills (Nashville collection district), Athens Woolen Mills (Nashville collection district), and Park Woolen Mills (Atlanta, Georgia, collection district), each of which was a corporation. Each of the subsidiaries was engaged in the manufacture of woolen goods, and American acted as selling agent

of each. American and each of its subsidiaries kept its books and made its income-tax returns on the calendar-year basis. American and each of its subsidiaries had the same officers during the periods involved herein.

3. For the calendar year 1918 the parent company (American) and each of its subsidiaries, including Louisville, filed individual income and profits-tax returns with the collectors of their respective districts, and the taxes disclosed thereon, totaling $295,610.74, were duly assessed by the Commissioner of Internal Revenue (hereinafter called "Commissioner"). The individual return of American disclosed a tax of $30,020.38, which was duly assessed against and paid by it. The individual return filed by Louisville disclosed income, war-profits and excess-profits taxes due from it in the sum of $129,364.93, which sum was duly assessed. As permitted by law, Louisville elected to pay the tax so assessed in quarterly installments and paid the first three installments thereof amounting to $97,023.69, leaving a balance due of $32,341.24. On December 20, 1919, Louisville filed with the Collector at Louisville an abatement claim as to the aforesaid balance of $32,341.24, said claim requesting relief under Section 327 (d) and Section 328 of the Revenue Act of 1918, 40 Stat. 1093. In connection with the abatement claim, a bond was given by Louisville, with the Royal Indemnity Company, of New York, as surety, in terms as follows:

"Bond for the protection of the Collector of Internal Revenue and the United States Government in case of claim for abatement filed in the office of the Collector of the District of Kentucky.

"Know All Men By These Presents:

"That the Louisville Woolen Mills, a Kentucky corporation, doing business in Louisville, Kentucky, where their offices are, has this day filed Form 47, asking an abatement of their tax in the sum of $32,-341.24.

"Now, Therefore, in consideration of withholding collection of the said taxes at this time and until such time as the Honor-able Commissioner of Internal Revenue may pass upon the claim for abatement of the said assessed taxes filed by the principal herein, and in order to protect the United States Government and Elwood Hamilton, Collector of Internal Revenue for the Kentucky district, against any loss, cost or damage by reason of the said claim for abatement, the Louisville Woolen Mills, of Louisville, Kentucky, principal, and the Royal Indemnity Company, of New York, surety, hereby bind themselves, jointly and severally, and their several heirs, executors, administrators, successors, and assigns to pay to the said Elwood Hamilton, Collector of Internal Revenue in and for the Collection District of Kentucky, the sum of $32,341.24, or as much thereof, if any, as the said Louisville Woolen Mills may be required by this United States of America to pay on account of said assessment, together with interest thereon at the rate of one percent per month from the 15th day of December, 1919, and together with all costs and penalties thereon; and the said principal and surety do further bind themselves, jointly and severally, their several heirs, executors, administrators, successors, and assigns, to hold the said Elwood Hamilton, Collector of Internal Revenue as aforesaid, entirely harmless from all loss, costs and damages he may sustain by reason of his having given to the said principal, that is, the Louisville Woolen Mills, an extension of time within which to obtain a final ruling from the Honorable Commissioner of Internal Revenue as to the liability of the said Louisville Woolen Mills for the said assessment; and further, to pay the sum of $32,341.24, or as much thereof, if any, as the Honorable Commissioner of Internal Revenue shall find from his rulings to be due to the United States of America from the said Louisville Woolen Mills on account of the said assessment, with interest thereon at the rate of one percent per month from the 15th day of December, 1919, together with all costs and penalties thereon which may accrue.

"In Testimony Whereof, witness the signature of the Louisville Woolen Mills, as principal, and the Royal Indemnity Com-

pany, of New York, as surety, this 15th day of December, 1919."

4. By letter dated October 26, 1920, the Commissioner advised American that for the calendar year 1918 it was affiliated with its four subsidiaries, including Louisville, within the meaning of Section 240 of the Revenue Act of 1918, 40 Stat. 1081, and that a consolidated income and excess-profits tax return for that year should be filed.

None of the corporations involved had requested that an affiliated return be required of the group, but neither American nor any of its subsidiaries ever questioned the correctness of the Commissioner's determination. This decision of the Commissioner was and is accepted by the parties as correct and is not now in issue.

Accordingly, on February 12, 1921, American prepared and filed with the Commissioner a consolidated return for the year 1918, showing a total tax liability for the group of $351,034.14, but this amount was never formally assessed. On November 17, 1921, American paid to the Collector at Nashville $100,000.00, which the Commissioner assessed against American on his December, 1921 list and applied as a credit on the tax shown to be due by the consolidated return for the year 1918, $30,000.00 of the $100,000.00 being obtained by American from Louisville.

The aforesaid $100,000.00 was transmitted to the Collector by letter dated November 17, 1921, reading in part as follows:

"Under date of October 28, 1921, the American Textile Woolen Company, Sweetwater, Tennessee, received from the Internal Revenue Department, Washington, D. C., a letter notifying us of a tentative assessment of $400,885.61, covering the years 1917, 1918, and 1919.

"Inasmuch as the Corporation feels that this tentative assessment is far in excess of any additional taxes, which may be found to be due, and as the Corporation desires to have a hearing on this case before the Commissioner of Internal Revenue at Washington, D. C., in order that we may present facts and figures to show that we are not liable for the amount of taxes as stated, and inasmuch as this hearing cannot be had at once, due to the fact that the Corporation is asking for sufficient time in which to prepare the necessary data to be presented to the Commissioner, we are herewith handing you our check for $100,000 as a voluntary payment to be applied to any taxes which may be found to be due for the years as stated above.

"It is expressly understood that the Corporation is making this voluntary payment with the distinct understanding that we do not admit liability in any stated sum, and that when the final adjustment of the case is made, should it be found that the taxes assessed to not equal the amount of this voluntary payment, any overplus is to be immediately returned to the Corporation, or applied to the payment of taxes for other years, as the Corporation may elect."

5. Under date of November 21, 1921, American made a request for special assessment under Section 210 of the Revenue Act of 1917, 40 Stat. 307, and Sections 327 and 328 of the Revenue Act of 1918. Response to that letter under date of December 7, 1921, reads as follows:

"Reference is made to letter of November 21, 1921, from Lee H. Battle, Public Accountant, who signs as your attorney relative to your income and excess profits tax returns for the years 1917, 1918, and 1919.

"In his letter request is made on your behalf for assessment under the provisions of Section 210 of the Revenue Act of 1917 and Sections 327 and 328 of the Revenue Act of 1918.

"In order to obtain consideration under the provisions of the Acts cited, it will be necessary for your corporation to make application in the manner contemplated by the provisions of Article 901, Regulations 45 Revised.

"Any brief or other matter which may be submitted in accordance herewith should be sworn to by an officer of your corporation and under the corporation seal.

"In this connection, you are advised that if it is your desire that Mr. Battle represent

you before the Bureau, it will be necessary that a power of attorney with documentary stamp attached, authorizing him to act for you in these matters be filed in the Bureau.

"In your reply please refer to the symbols at the beginning of this letter."

6. On December 9, 1921, American, through its attorney, addressed a further letter to the Commissioner relative to its prior request for special assessment, and the response thereto by the Commissioner dated February 3, 1922, repeated substantially the statements made in the letter of December 7, 1921, quoted above.

7. On February 17, 1922, American addressed the following letter to the Commissioner of Internal Revenue:

"Reference is made to your letter of Feb. 3rd, 1922, in which you refer to our request of November 21, 1921, filed by our auditor acting as our attorney, for assessment of our income and excess profits tax for the years 1917, 1918, and 1919, under the provisions of Section 210 of the 1917 law, and 327 and 328 of the 1918 law. In order to secure this consideration, we note that you request us to make application in the manner provided for in Article 901, Regulation 45, and in reply to this request, we beg to submit the following information.

"When we made the request as stated in the letter of our attorney under date of Nov. 21, 1921, we felt that the result of such an assessment would be of value in assisting the Department in arriving at the adjustment of our tax returns for the years named. The books and records of the five corporations involved in this case, have been kept in such a manner, particularly in the years prior to 1917, that it is practically impossible to arrive at the proper invested capital and net income without a reconstruction of the accounts, especially from March 1, 1913, on down to date. This we decided to do, and employed an approved and reputable Appraisal Company to appraise all of the plants and set up the fair market value as at March 1, 1913.

"In view of this action and believing that this is the only fair and correct way of adjusting the matters at issue, we are now of the opinion that it will not be necessary, at this time, to request the assessment as referred to in our letter of November 21st, 1921. In substantiation of our position in this matter, we refer to the Internal Revenue Bulletin, number 5, issued Jan. 30, 1922, page 19–ARR747.

"Taking into consideration all of the circumstances surrounding this case, we have decided to withhold our request for the special assessment and to prepare statements, schedules, and facts based upon the figures and information acquired through the Appraisal report, all of which will be presented to the Bureau in the form of a brief, just as soon as this work can be completed.

"The Appraisal report has just been received by us within the past few days, and we will be ready with this brief at the earliest possible date."

The appraisal report referred to in the above letter was thereafter filed with the Commissioner by American.

8. By letter dated January 31, 1922, American requested the Commissioner to direct the Collector at Louisville to make no further requirements as to renewing the bond given with the claim in abatement filed by Louisville for taxes for the year 1918, which bond is set out in Finding 3 above. In response to that letter, the Commissioner advised American under date of March 29, 1922, that an examination of the returns for the years 1917, 1918, and 1919, of American and its affiliated companies in connection with the claim for abatement had been completed and that the taxpayer (American) would be advised of the results thereof in due course. The Commissioner did not issue any instructions to the Collector at Louisville concerning the request of American.

9. Various proceedings were had and on May 21, 1924, the Commissioner mailed an audit letter to American setting forth his determination of the taxes due from the affiliated group for the years 1917, 1918, and 1919. As to the year 1918, the said letter disclosed a total net income of the group of $649,529.84; consolidated invested

capital of $705,151.42; and an aggregate tax of $483,217.93, allocated as follows:

| | |
|---|---|
| American Textile Woolen Co. | $217,627.57 |
| Athens Woolen Mills | 4,582.98 |
| Louisville Woolen Mills | 129,364.93 |
| Park Woolen Mills | 30,661.15 |
| Sweetwater Woolen Mills | 100,981.30 |
| Total | 483,217.93 |

Under the above allocation an additional tax was shown of $87,607.19 against American.

10. On June 13, 1924, American acquiesced in the net income determined by the Commissioner in the letter of May 21, 1924, for the years 1917 to 1919, inclusive, and on September 25, 1924, it filed an appeal to the Commissioner from the preliminary determination of the consolidated tax liability for the years 1917 to 1919, inclusive. The appeal consisted of an application for special assessment but made no reference to any allocation of the proposed deficiencies according to the respective net incomes of the several corporations.

11. On January 12, 1925, the Commissioner mailed a so-called 30-day letter to American, said letter showing a corrected income-tax liability of American and its subsidiaries for the year 1918 of $429,539.94 and containing a statement of taxes previously assessed as follows:

| | |
|---|---|
| American Textile Woolen Company: | |
| Original tax acct. No. 40534 | $ 30,020.38 |
| Additional tax, Dec. 1921, Page 9, Line 8 | 100,000.00 |
| Total | 130,020.38 |
| Sweetwater Woolen Mills: | |
| Original tax acct. No. 40523 | 100,981.30 |
| Louisville Woolen Mills: | |
| Original tax acct. No. 40155 | 129,364.93 |
| Park Woolen Mills: | |
| Original tax acct. No. 40853 | 30,661.15 |
| Athens Woolen Mills: | |
| Original tax acct. No. 40309 | 4,582.98 |
| Total tax assessed | 395,610.74 |
| Correct tax liability | 429,539.94 |
| Total tax assessed | 395,610.74 |
| Deficiency in tax | 33,929.20 |

The aforesaid letter also advised American as follows:

"In accordance with the above conclusions, your claim for the refund of $45,000 filed by American Textile Woolen Company, abatement of $5,541.09 filed by the Park Woolen Mills, and abatement of $32,-341.24 filed by the Louisville Woolen Mills, aggregating $82,882.33 will be rejected.

"The Collector of Internal Revenue for your district will be officially notified at the expiration of thirty days from the date of this letter of the rejection.

"Upon receipt of notice and demand from that official, payment should be made to his office, in accordance with the conditions of his notice."

With regard to the year 1918, the above letter advised American as follows:

"You are advised that after careful consideration and review, your application under the provisions of Section 327 for assessment of your profits tax as prescribed by Section 328 of the Revenue Act of 1918, has been allowed."

Recomputation of American's tax liability based upon the consolidated net income and consolidated invested capital of American and its affiliates and giving effect to Section 328 of the Revenue Act of 1918 disclosed a correct tax liability of American in amount of $429,539.94.

12. On February 11, 1925, American filed with the Commissioner an application for appeal from his preliminary determination of the consolidated income and profits tax liabilities for those years, as shown in the audit letter of January 12, 1925. In this application for appeal no reference was made to any allocation of the proposed deficiencies among the affiliated companies.

13. On October 7, 1925, the Commissioner mailed to the "American Textile Woolen Company and Subsidiaries, Sweetwater, Tennessee," a so-called 60-day letter setting forth his determination of deficiencies for the years 1917 to 1919, inclusive. The final determination of the Commissioner, as set out in this letter, was identical with his determination set out in the 30-day letter of January 12, 1925, referred to in Finding 11 above.

14. The total deficiencies for the three years, 1917, 1918, and 1919, determined by the deficiency letter of October 7, 1925, amounted to $127,246.17 although as to 1919 it took the form of determining an overassessment.

15. On December 5, 1925, American filed an appeal with the Board of Tax Appeals from the deficiency asserted by the Commissioner in his letter of October 7, 1925. Later, by order of January 14, 1926, on motion of American and with the consent of the Commissioner, the four subsidiaries were brought in as parties to the appeal by amendment. Later, and prior to the hearing on appeal, by agreement of American and the Commissioner and with the concurrence of the Board, the subsidiaries were eliminated by appropriate order upon the ground that the deficiency letter of October 7, 1925, was not a statutory notice to the said subsidiaries of the respondent's determination of a deficiency against them.

16. The Commissioner of Internal Revenue did not at any time at or before the hearing on the appeal described in Finding 15 hereof, make any motion or request by pleadings or otherwise for an increase in the deficiency determined in the deficiency letter of October 7, 1925, which for the year 1918 amounted to $33,929.20, as set forth in Finding 11 hereof.

17. On June 12, 1931, the Board of Tax Appeals promulgated its Findings of Fact and Opinion in the appeal set forth in Finding 15 and remanded the case for settlement under Rule 50, 26 U.S.C.A. § 1111. American Textile Woolen Company v. Commissioner of I. R., 23 B.T.A. 670.

18. On September 11, 1931, the Commissioner filed with the Board of Tax Appeals a notice of settlement under Rule 50 of that Board. This proposed settlement for the year 1918 allocated the entire taxes of the consolidated group in the amount of $429,539.94 to American and credited to that tax liability the taxes theretofore assessed against and paid by American on its individual return for that year; namely, $30,020.38 (see Finding 3 hereof), and the $100,000.00 paid by American on November 17, 1921, and applied on the consolidated return for the year 1918 (see Finding 4 hereof), a total of $130,020.38, resulting in a deficiency balance of $299,519.56.

19. On September 30, 1931, American filed its proposed determination under Rule 50, in which for the year 1918 it showed the following:

| | |
|---|---|
| Correct tax liability | $429,539.94 |
| Taxes assessed and paid: | |
| American Texile Woolen Co.: | |
| 1919 | $30,020.38 |
| 1921 | 100,000.00 |
| Athens Woolen Mills, 1919 | 4,582.98 |
| Sweetwater Woolen Mills, 1919 | 95,551.48 |
| Park Woolen Mills, 1919 | 25,120.06 |
| Park Woolen Mills (transferee), 1921 | 5,541.09 |
| Louisville Woolen Mills, 1919 | 96,773.69 |
| Total tax assessed and paid | 357,589.68 |
| Unpaid portion of correct tax liability | 71,950.26 |

Attached to and made a part of American's proposed determination were certain schedules. Schedule 2 which related to the deficiency for the year 1918 read as follows:

COMPUTATION OF DEFICIENCY, 1918

| | |
|---|---|
| Total consolidated tax as shown in Bureau letters of October 7, 1925, and January 12, 1925 | $429,539.94 |
| Inasmuch as excess-profits tax was determined under Section 328 of the Revenue Act of 1918, no change is made on account of the correction of the 1917 tax and in accordance with the decision of the Board the entire tax is allocated to the American Textile Woolen Co. | |
| Total tax as above | 429,539.94 |
| Less: Tax previously assessed: | |
| American Textile Woolen Co.: | |
| Original $30,020.38 | |
| Additional Dec. 1921 100,000.00 | |
| | 130,020.38 |
| Sweetwater Woolen Mills (Orig.) | 100,981.30 |
| Louisville Woolen Mills (Orig.) | 129,364.93 |
| Park Woolen Mills (Orig.) | 30,661.15 |
| Athens Woolen Mills (Orig.) | 4,582.98 |
| Total tax previously assessed | 395,610.74 |
| Deficiency | 33,929.20 |

20. On October 21, 1931, a hearing was had before the Board of Tax Appeals for the purpose of determining the correct computation of the deficiency under Rule 50. At that time, counsel for American presented to the Board a "Motion for Leave to Amend Petitioner's Proposed Determination under Rule 50," reading as follows:

"Comes now the above-named petitioner, by counsel, and moves for leave to amend its alternative proposed determination under Rule 50 in the following respects:

"(1) By correcting the Transcript of Account wherein petitioner on page 1 has shown as 'Taxes Assessed and Paid' for 1917 by the Sweetwater Woolen Mills, the amount of $95,551.48 to show $95,547.80. Because of said change, the 'Total Taxes Assessed and Paid' for 1918 should be increased from $357,589.68 to $357,593.36, and the 'Unpaid Portion of Correct Tax Liability' should be changed from $71,950.26 to $71,953.94.

"(2) By correcting on page 2, Schedule 2, 'Computation of Deficiency, 1918,' the amount shown under 'Tax Previously Assessed,' Sweetwater Woolen Mills, from $100,981.30 to $95,547.80, by correcting the 'Total Tax Previously Assessed' from $395,610.74 to $390,177.24, and by correcting the amount shown as the 'Deficiency' from $33,929.20 to $39,362.70."

21. A copy of the official report of the proceedings in the Board of Tax Appeals on October 21, 1931, referred to in the preceding finding, is attached as Exhibit 1 to the stipulation filed herein by the parties on February 28, 1949.

The Honorable William D. Love, the Member of the Board of Tax Appeals who had written the opinion in the case referred to in Finding 17, presided at the hearing on October 21, 1931, and both the Commissioner and the American Textile Woolen Company were represented by counsel. American contended (1) that the deficiency against it could not exceed the deficiency proposed in the deficiency letter of October 7, 1925 (Finding 13), because no motion had been made by the Commissioner at or before the hearing to enlarge the amount of the deficiency; and (2) that the aggregate amount of the tax liability of American and its subsidiaries should be reduced by the amount of taxes actually paid by American and its subsidiaries for the years involved and by the amount of the taxes previously assessed against American. The Member stated that he would not make a decision on these questions but would merely indicate what he thought the decision of the Board would be. On the first contention he agreed with the taxpayer, and on the second he stated that the aggregate tax liability of the group should be

reduced by the amount of the taxes theretofore paid by American and its subsidiaries, but that the assessment previously made against American could not be taken as an offset against the amount of taxes which were due in accordance with the decision of the Board of Tax Appeals.

The hearing adjourned with the understanding that the parties would prepare and present to the Board at a later date a statement of the taxes due.

22. On January 9, 1932, the Board of Tax Appeals rendered the following decision:

"Pursuant to the Findings of Fact, and Opinion of the Board promulgated June 12, 1931, the respondent in the above-entitled proceeding filed notice of settlement with the Board on September 11, 1931. Copy of said notice was duly served on the petitioner, together with notice of hearing, and the petitioner filed counter-proposal of settlement on Sept. 30, 1931. The case came on for hearing October 21, 1931. After due consideration, it is

"Ordered and Decided that upon redetermination the deficiency for the year 1917 is $53,376.62; for the year 1918, $39,362.70, and for the year 1919, there is an over-assessment of $120,317.48."

23. On January 16, 1932, the Board of Tax Appeals entered the following order:

"It is hereby

"Ordered that the order of redetermination in the above-entitled proceeding, Docket No. 9689, dated January 9, 1932, be and the same is hereby vacated, and it is

"Further Ordered and Decided that upon redetermination the deficiencies are as follows:

| | |
|---|---|
| For the year 1917 | $ 53,376.62 |
| For the year 1918 | 39,362.70 |
| For the year 1919: | |
| Correct tax liability | 198,048.47 |
| Total tax paid | 179,631.91 |
| Unpaid portion of correct tax liability | 18,416.56 |
| Total assessed | 318,365.95 |
| Correct tax liability | 198,048.47 |
| Tax overassessed to be abated | 120,317.48" |

24. In determining the deficiency of American for the year 1918 to be $39,362.70, the Board determined the correct tax liability to be $429,539.94, and that there had been previously assessed against American $130,020.38, against Sweetwater $95,547.80, against Louisville $129,364.93, against Park $30,661.15, and against Athens $4,582.92— aggregate assessments of $390,177.24.

Of the amount of $129,364.93 assessed against Louisville on its original return, payments had been made by Louisville of $97,023.69, leaving an unpaid balance of $32,341.24, for which the abatement claim was filed and the bond was given as set forth in Finding 3.

25. American appealed from the decision of the Board of Tax Appeals to the United States Circuit Court of Appeals for the Sixth Circuit. The Commissioner did not take a cross-appeal. That Court on February 16, 1934, affirmed the Board. American Textile Woolen Co. v. Com'r of I. R., 68 F.2d 820. American's petition for certiorari was denied by the United States Supreme Court, 293 U.S. 558, 55 S.Ct. 70, 79 L.Ed. 659.

26. The deficiency found by the Board against American as aforesaid was duly assessed by the Commissioner on his August 27, 1932, list, and on May 10, 1938, this deficiency together with other deficiencies determined by the Board for the years 1920 and 1921, aggregating approximately $263,000.00, were compromised by appropriate agreement between American and the Attorney General of the United States. Under the terms of that agreement American agreed to pay in full compromise of the aforesaid deficiencies for the years 1917 to 1921, inclusive, the sum of $77,500.00 as follows: $15,000.00 within 15 days after acceptance; $12,500.00 within one year; $16,000.00 within two years; $17,000.00 within three years; and $17,000.00 within four years.

The compromise agreement contained the following stipulations as part consideration therefor:

(1) That the matters compromised shall not include the subject matter of the action on the bond of the Louisville Woolen Mills and none of its assets shall be used in effecting this compromise.

(2) That taxpayer shall hold in trust any proceeds from the sale of property of the Louisville Woolen Mills and account for same at the conclusion of the bond litigation, after defraying the necessary expenses of maintaining the inactive Louisville plant.

(3) That the offer provide that the bonds given as collateral for the deferred payments shall be secured by a first mortgage on the real estate and plant as well as the machinery, equipment, and fixtures.

(4) That the payments shall be made to the local Collector and that he shall have authority to approve the collateral in co-operation with the United States Attorney.

27. On August 23, 1932, the Commissioner wrote Louisville the following letter:

"Your claim is for abatement of part of the tax reported on your separate 1918 return and is a claim for special assessment under sections 327 and 328 of the Revenue Act of 1918. During the year 1918 your company was a subsidiary of American Textile Woolen Company, and computation of the profits tax of the consolidation under sections 327 and 328 of the Revenue Act of 1918 was allowed by the Bureau. The Bureau's computation of the consolidated tax was appealed to the United States Board of Tax Appeals by your parent company on an issue relative to the allocation of the tax, and the Board's order entered January 16, 1932, in effect allocates to your company the amount of tax previously assessed on your return. Your claim for abatement of part of such assessment will therefore be rejected.

"The rejection of the claim will officially appear on a schedule to be approved by the Commissioner."

28. Thereafter the Commissioner did officially reject the claim for abatement of Louisville set out in Finding 3.

29. Royal Indemnity Company was not a party to any of the proceedings, negotiations, correspondence, or hearings referred to in these findings, and did not learn of them until May 1933, at which time the tax case of American was pending on

American's appeal in the Sixth Circuit Court of Appeals.

30. Subsequent to the official rejection set out in Finding 28, the United States, through its Collector of Internal Revenue, demanded from Louisville and this plaintiff payment of the sum of $32,341.24, the amount of the fourth installment of tax assessed against Louisville on its individual 1918 return, together with interest thereon at the rate of 1% per month from December 15, 1919, as provided in the bond hereinbefore set out in Finding 3. Payment having been refused, the United States on August 12, 1936, instituted suit against Louisville and Royal Indemnity Company on said bond in the United States District Court for the Western District of Kentucky for the sum of $32,341.24, together with interest thereon at the rate of 1% per month from December 15, 1919, until paid. At the time of the institution of that action, Louisville was, and still is, insolvent, and made no defense to the action. On November 17, 1939, the aforesaid District Court entered judgment in favor of the United States and against Royal Indemnity Company in the sum of $32,341.24 with interest thereon at the rate of ½ of 1% per month from December 15, 1919, until August 23, 1932, and thereafter at the rate of 1% per month until paid. On appeal, the Circuit Court of Appeals for the Sixth Circuit affirmed the judgment of the District Court. 120 F.2d 136. The Supreme Court denied certiorari on January 12, 1942. 315 U.S. 797, 62 S.Ct. 488, 86 L.Ed. 1198.

On January 28, 1942, plaintiff satisfied said judgment in full by the payment of $93,545.80 to the United States.

31. On May 15, 1943, a claim for refund was filed by "Louisville Woolen Mills (claim presented by Royal Indemnity Company, surety, as subrogee of the rights of the taxpayer)," claiming the sum of $93,-545.80 paid by the plaintiff herein as stated in the preceding finding and for interest thereon from January 28, 1942, until paid, at the rate of 6% per annum. This claim was denied by the Commissioner on December 28, 1943.

Conclusion of Law

Upon the foregoing special findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and its petition is therefore dismissed.

Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

Chas. I. Dawson, Louisville, Ky., Arthur W. Grafton, Wyatt, Grafton & Grafton, and Bullitt, Dawson & Tarrant, all of Louisville, Ky., on the brief, for plaintiff.

Joseph H. Sheppard, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

In this case the plaintiff seeks to recover $93,545.80 with interest from January 28, 1942, representing the fourth installment of income and profits taxes, with interest, shown to be due upon the return for the calendar year 1918 filed by the Louisville Woolen Mills, a corporation, and which tax was duly assessed by the Commissioner of Internal Revenue against said corporation. The separate corporation income and profits-tax return filed by the Louisville Woolen Mills for 1918 showed a total income and profits tax due in the sum of $129,364.93. The corporation elected to pay the tax so assessed in quarterly installments, and the first three installments amounting to $97,-023.69 were duly paid, leaving a balance of $32,341.24 unpaid which represented the fourth installment due December 15, 1919. On December 20, 1919, the taxpayer, believing that it was entitled to some relief in connection with its excess profits taxes under the provisions of Sections 327(d) and 328 of the Revenue of 1918, filed a request with the Commissioner of Internal Revenue for such relief and at the same

time prepared and filed with the Collector of Internal Revenue a claim for abatement of the fourth installment of tax in the amount above-mentioned. In connection with this claim for abatement the Louisville Woolen Mills furnished to the Collector a surety bond for the payment of said balance remaining due, with interest, with the Royal Indemnity Company of New York, the plaintiff herein, as surety on said bond. This bond is set forth in full in Finding 3.

In the audit of the return of the Louisville Woolen Mills and returns of certain other corporations, the Commissioner of Internal Revenue determined that the Louisville Woolen Mills and three other corporations, referred to in the findings, were affiliated with the American Textile Woolen Company, a Tennessee corporation, for the calendar year 1918 and other years, within the meaning of Section 240 of the Revenue Act of 1918, and that the income and excess profits taxes of these corporations should be determined and computed upon a consolidated basis under Section 240 of the taxing act and regulations prescribed by the Commissioner.[1] The American Textile Woolen Company owned all of the capital stock of the Louisville Woolen Mills, Athens Woolen Mills, Sweetwater Woolen Mills, and the Park Woolen Mills. This case involves only the claim for refund by the plaintiff of the fourth installment of the tax, plus interest, paid by it under its surety bond pursuant to a judgment on said bond of the U. S. District Court for the Western District of Kentucky, which was affirmed on appeal, 6 Cir., 120 F.2d 136.

On October 26, 1920, the Commissioner, after having made a preliminary audit of the returns filed by the several corporations above-mentioned, mailed to the American Textile Woolen Company, the parent corporation, an audit letter proposing an additional consolidated income and excess profits tax for the consolidated group of $400,-885.61 covering the years 1917, 1918, and 1919. Following the receipt of this preliminary audit letter the American Textile Woolen Company, as the parent corporation of the consolidated group, prepared and sent to the Commissioner of Internal Revenue a consolidated return for 1918 on which it computed a total consolidated tax liability for the group of $351,034.14. No assessment was ever made against American or any of the affiliated corporations upon this return and the amount computed thereon was never formally assessed by the Commissioner. The total income and excess profits taxes which had been shown to be due upon the separate corporation income and profits-tax returns filed by the several corporations in the affiliated group, including American Textile Woolen Company, were $295,610.74. The amounts totaling this sum had been formally assessed by the Commissioner and had all been paid by the several corporations except the last installment of $32,341.24 shown to be due on the return filed by Louisville Woolen Mills. In connection with the Commissioner's audit letter of October 26, 1920, and a consolidated tax liability of $351,034.14 computed by American, as above referred to, the American Company sent to the Collector of Internal Revenue, at Nashville, its check dated November 17, 1921, for $100,000 to apply on the proposed additional tax indicated in the

1. Sec. 240.
    "(a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return: * * *
    "In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. * * *
    "(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls * * * substantially all the stock of the other or others, * * *."

Commissioner's audit letter. (See Finding 4.)

From this point forward until the final decision was made with respect to the consolidated tax liability of the affiliated group by the Tax Court on January 16, 1932, and the U. S. Circuit Court of Appeals on February 16, 1934, American Textile Woolen Co. v. Com'r I. R., 6 Cir., 68 F. 2d 820, the matter of the tax liability of the consolidated group was handled before the Commissioner and the courts by the American Textile Woolen Company, the parent corporation. During this time the abatement claim, which had been filed by the Louisville Woolen Mills, was held under consideration by the Commissioner of Internal Revenue, and the surety bond which had been given for the last installment of the tax previously assessed against that corporation on the separate return which it had filed, remained in effect.

All the notices, audits, and determinations, which were made by the Commissioner relative to the tax liability of the consolidated group of the deficiencies in such tax for the calendar years 1917, 1918 and 1919, were sent to the parent corporation, the American Textile Woolen Company. As shown in Findings 11–14, the Commissioner made his final determination on October 7, 1925, of a total consolidated tax liability of $429,539.94 and a deficiency of $33,929.20 for 1918, after deducting the taxes theretofore assessed against the several corporations in the total amount of $395,610.74. This statutory deficiency notice set forth the amounts of taxes which had been formally assessed against the several corporations, including the additional payment of $100,000 by the American Company on November 17, 1921. This deficiency notice allowed the request on behalf of the consolidated group for determination of the excess profits tax under Section 328 of the Revenue Act of 1918, and concluded with the following statement:

"In accordance with the above conclusions, your claim for the refund of $45,000 filed by American Textile Woolen Company, abatement of $5,541.09 filed by the Park Woolen Mills, and abatement of $32,- 341.24 filed by the Louisville Woolen Mills, aggregating $82,882.33 will be rejected.

"The Collector of Internal Revenue for your district will be officially notified at the expiration of thirty days from the date of this letter of the rejection.

"Upon receipt of notice and demand from that official, payment should be made to his office, in accordance with the conditions of his notice."

The American Company appealed to the Tax Court for a redetermination of the deficiency for 1918, and also for 1917 and 1919. Among other issues raised in this proceeding by the American Textile Woolen Company were (1) that the deficiencies asserted were barred by the statute of limitations, and (2) that in his determination of the deficiencies the Commissioner erred in allocating the consolidated tax liability of the consolidated group to the American Textile Woolen Company. The Tax Court held, 23 B.T.A. 670, that an agreement existed among members of the affiliated group for the allocation of this consolidated tax to the American Textile Woolen Company, the parent corporation, and approved the action of the Commissioner in sending the statutory notice of the deficiencies for the years 1917, 1918 and 1919, to the American Company.

In the final determinations by the Commissioner of Internal Revenue and the Tax Court as to the deficiencies payable by the American Textile Woolen Company, the parent corporation, credit was given for the total amounts of taxes which had been shown to be due and had been formally assessed upon the separate individual returns filed by the several corporations.

As shown in Finding 27, the Commissioner, on August 23, 1932, formally rejected the abatement claim previously filed by the Louisville Woolen Mills for the fourth installment of the tax shown to be due upon the return filed by it and for which credit had been given in the decisions of the Commissioner and the Tax Court, in determining the deficiency in the consolidated tax liability for 1918 of $33,929.20, against the American Textile Woolen Company.

After the plaintiff had paid the judgment of the U. S. District Court, as hereinbefore stated, under its bond for the payment of the fourth installment of the tax and interest thereon, assessed in 1919 against the Louisville Woolen Mills, it filed a claim for refund with the Commissioner of Internal Revenue, which was rejected. In this suit, which is based upon the rejection of that claim for refund, the plaintiff contends that the collection of the fourth installment of the 1918 tax, shown on the return filed by the Louisville Woolen Mills, became barred by the statute of limitations on March 15, 1924, five years after the return made by the Louisville Woolen Mills was filed, because of the existence of an agreement among the group of consolidated corporations that the consolidated tax liability of the group for 1918 should be allocated to the American Woolen Textile Company, the parent corporation. Plaintiff further contends that the allocation or assessment of any part of the total tax liability of the consolidated group against the Louisville Woolen Mills became barred February 12, 1926, five years after the American Textile Woolen Company prepared and sent to the Commissioner of Internal Revenue a consolidated income and profits-tax return on which said company computed a total tax liability for the consolidated group of $351,034.14. These contentions of plaintiff are based upon the theory that when it was found that the corporations were affiliated and the agreement among the group that the parent corporation would assume liability for the consolidated tax, the assessments theretofore made against the several corporations on the basis of the separate returns filed by them, became void and of no effect, and relieved them of all liability therefor.

Plaintiff says that upon the payment of the tax, with interest, covered by the bond given to the Collector of Internal Revenue at Louisville, Kentucky, on December 20, 1919, it was subrogated to all of the rights which the Louisville Woolen Mills had to contest the authority of the Government to collect from it any part of the consolidated tax liability finally determined to be due, and that plaintiff is therefore entitled to a refund of the tax and interest paid for the reasons above stated.

The defendants says that under the decision in United States v. John Barth Co., 279 U.S. 370, 375, 49 S.Ct. 366, 73 L.Ed. 743, the giving of the bond to insure the collection of the tax in question created in the Government a cause of action separate and distinct from that which previously existed for the collection of such tax upon the assessment which had been made, and that in any event the judgments of the District Court and the Court of Appeals, hereinbefore referred to, against the plaintiff on its bond for the amount which it here seeks to recover, are res adjudicata. In those cases the courts, following the rule announced in the Barth case, supra, held only that the plaintiff could not under the terms of its bond defend against the claim of the Government for the payment of the amount of tax and interest covered by the bond, on the ground that the Government was without right to collect the tax, for which the bond had been given, from the Louisville Woolen Mills.

It is clear from a reading of the bond (Finding 3) that by its express terms and conditions it was a waiver or extension of any statute of limitation as to collection of the fourth installment of the 1918 tax, that might otherwise have been relied upon by the taxpayer, Louisville Woolen Mills, had the Collector, without such bond, delayed collecting this tax beyond March 15, 1924. The tax of $32,341.24 had been duly assessed, was due and payable, and notice and demand for payment thereof had been made upon the taxpayer at the time the bond was given to the Collector to secure him and the United States against loss, by granting an extension of time within which to enable the taxpayer to obtain a final ruling from the Commissioner of Internal Revenue as to whether or not said sum was due from the Louisville Woolen Mills upon its income for 1918. That ruling was made about August 23, 1932. The tax for which the bond was given was finally determined to be due as a part of the tax computed by the Commissioner and determined to be due upon the consolidated net income and invested capital of the affiliated corpora-

tions, after applying the relief provisions of Section 328 of the Revenue Act of 1918. This determination was judicially approved by the Tax Court, and the Circuit Court of Appeals for the Sixth Circuit. These decisions are not and cannot be questioned here.

Under the facts and circumstances of the case we find nothing in the provisions of Section 240 of the Revenue Act of 1918 relating to consolidated returns and the computation of tax upon consolidated net income and invested capital, or in any other provision of the tax statutes, which would warrant the conclusion that the Louisville Woolen Mills, had it paid the tax here in question at the time plaintiff paid it, could recover such tax on the ground that it was barred by any statute of limitation. The rights of plaintiff, as surety on the bond given to secure the payment of the tax, can be no greater than those of Louisville.

As shown in the findings, the five corporations, constituting the affiliated group, filed separate returns for 1918, in March 1919, and the taxes shown to be due on such returns were duly assessed against such corporations and, with the exceptions of the fourth installment due by Louisville Woolen Mills and a small amount reported by and assessed against the Park Woolen Mills, such assessments were paid. In all of his determinations and computations of the tax upon the basis of consolidated income and invested capital, and in the final statutory notice of a deficiency of $33,929.20 sent to the parent corporation, the American Textile Woolen Company, under the provisions of the Revenue Act of 1924, 26 U.S.C.A.Int.Rev.Acts, page 1 et seq., the Commissioner listed and credited against the total tax of the consolidated group the amounts of taxes already assessed against the several corporations. In its redetermination of the deficiency for 1918 the Tax Court did likewise in its judgment of January 16, 1932. No consolidated return was ever filed with the Collector of Internal Revenue by the parent corporation, and no new assessment was ever made of any portion of the consolidated tax liability of $429,539.94 for 1918 except the payment of $100,000 by Amer-

ican Textile Woolen Company, November 17, 1921, and the deficiency of $39,362.70 determined by the Tax Court.

In our opinion there was no necessity under any provision of the revenue statute for the making of a new or further assessment against the parent corporation of the total of the portions of such consolidated tax which had previously been assessed against the several corporations, on the returns which they had filed. The statute in effect at the time the Commissioner made his preliminary determination, on January 12, 1925, and his final determination on October 7, 1925 (Findings 11 and 13,) was the Revenue Act of 1924. That Act prescribed the procedure to be followed before assessment and collection of deficiencies, and provided for appeals to the Board of Tax Appeals (now the Tax Court). The jurisdiction of the Board was then limited to the redetermination of deficiencies. The statute defined a deficiency as the difference between the tax which had been assessed or collected without assessment and the tax determined to be due. The Commissioner and the Tax Court in effect consolidated the separate returns, computed consolidated income and tax, and after allocating to the several corporations the taxes which had been assessed against them, came up with a consolidated tax deficiency. This procedure and method had been followed throughout the period of the audit beginning October 26, 1920. This was acquiesced in by the consolidated group, and at every step credit was taken for the assessments which had been made against the proposed consolidated tax liability. The case was prosecuted throughout by the American Textile Woolen Company, the parent corporation. Its officers were the officers of each of the affiliated corporations.

The conclusion arrived at by the courts, under the facts and circumstances, that the parent corporation, American Textile Woolen Company, had, by its conduct, agreed to assume liability for the consolidated tax, did not, in our opinion, render void the assessments previously made or cause the collection of tax and interest, here involved, from the Louisville Woolen Mills or the plaintiff, to become barred under any

statute of limitation on March 15, 1924 (five years after the Louisville Woolen Mills filed its return), or on February 12, 1926 (five years after American Textile Woolen Company prepared and sent to the Commissioner a consolidated return with the payment of an additional amount of $100,000).

Plaintiff is not entitled to recover and its petition is dismissed. It is so ordered.